## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC,<br><br>                          Plaintiff,<br><br>v.<br><br>NEPTUNE INVESTORS, LLC; AHG GROUP,<br>LLC, AHG GROUP HOLDINGS, LLC; HFP<br>INVESTORS LLC; GOROVITZ FAMILY<br>LIMITED PARTNERSHIP; GENE HARRIS; JOHN<br>AND JANE DOES 1-10; & ABC CORPS. 1-10<br>                          Defendants. | No. _____ |

## **COMPLAINT**

Plaintiff Warren Hill, LLC ("Warren Hill" or "Plaintiff") files this Complaint against

Defendants Neptune Investors, LLC ("Neptune"), AHG Group, LLC ("AHG Group"), AHG

Group Holdings, LLC ("AHG Holdings"), HFP Investors, LLC ("HFP"), Gorovitz Family

Limited Partnership ("Gorovitz"), Gene Harris, John and Janes Does 1-10, and ABC Corps. 1-10

(collectively, "Defendants").

In a related action pending before the Honorable Harvey Bartle III, Warren Hill obtained

a substantial judgment against SFR Equities, LLC ("SFR"), which is owned by, or an affiliate of,

Defendants. SFR, in an intentional and tortious attempt to avoid paying that judgment, conspired

with and engaged in numerous fraudulent and voidable transactions with Defendants. Warren

Hill brings this action to void these fraudulent transactions and to recover substantial monetary

damages, punitive damages, attorneys' fees, and all other relief the circumstances may require.

In support of its claim, Warren Hill alleges as follows:

## I.  <u>INTRODUCTION</u>

1.      This case involves a series of fraudulent transactions between Defendants and their subsidiary or affiliate, SFR.  These transactions were designed to render SFR incapable of paying Warren Hill what it is owed pursuant to an agreement between Warren Hill and SFR.

2.      Specifically, SFR and Warren Hill entered into a Membership Interest Purchase Agreement (the "Agreement"), pursuant to which SFR purchased Warren Hill's equity stake in a company named Vendor Assistance Program, LLC ("VAP").  In exchange, SFR agreed to make several substantial payments to Warren Hill, including yearly "earnout" payments tied, generally speaking, to VAP's financial performance.

3.      SFR failed to make the required earnout payments, and attempted to conceal its misdeeds, in concert with its co-conspirators (including Defendants), principally by hiding significant sums of money in, and funneling such money through, sham companies called Blue Stone Finance, LLC ("BSF") and Bluestone Capital Markets, LLC ("BCM").  Warren Hill sued SFR for breaching the Agreement and the Honorable Harvey Bartle III entered summary and final judgment on liability and damages in favor of Warren Hill.

4.      Aware of impending litigation with Warren Hill, and throughout the pendency of that litigation, SFR took intentional and knowing steps to render itself incapable of paying a judgment in the case.  SFR engaged in numerous transactions with Defendants, and others, to hide assets that would have been available to satisfy a judgment.  In doing so, Warren Hill believes, and therefore alleges, SFR funneled assets worth well in excess of $10 million out of its possession and into the possession of Defendants and their affiliates.

5.      These transactions, which are described below, were insider deals, as SFR and Defendants are ultimately owned and controlled by the same individuals:  Alan Ginsburg, Gene

Harris, and Aaron Gorovitz.   Through a web of companies, these individuals moved money and other assets from SFR to affiliated companies so that the funds would ultimately end up in their own pockets.  Defendants and SFR essentially moved money from one hand to the other, so that Mr. Ginsburg, Mr. Harris, and Mr. Gorovitz could keep money that SFR owed to Warren Hill pursuant to a valid judgment entered in the United States District Court for the Eastern District of Pennsylvania.

6.      This misconduct was intentional and tortious.  Indeed, SFR has appealed the Court's judgment without posting a bond.  Defendants and SFR have stated that they intend to force Warren Hill to "chase" the money that they fraudulently funneled away from SFR, the fraudulent transfer of which served as a contingency plan for SFR's loss of its litigation with Warren Hill.  In the absence of these fraudulent transactions, SFR would have had assets necessary to satisfy the Court's judgment.

7.      These transactions flowing out of SFR are fraudulent and voidable under applicable law, and Warren Hill is entitled to monetary damages, punitive damages, and all other available relief, arising from them.

## II.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse and the matter in controversy exceeds the statutory requirement.  Plaintiff Warren Hill is a Delaware limited liability company whose members are citizens of Pennsylvania.  Defendants are all Florida limited liability companies, partnerships, or residents, who are citizens of Florida or whose members or partners are citizens of Florida.  Warren Hill seeks millions of dollars in damages, thus exceeding the jurisdictional threshold.

9.      This Court has personal jurisdiction over Defendants because these Defendants were all participants in fraudulent and/or voidable transactions that were directed at, and aimed to cause harm in, Pennsylvania.  Defendants knew that Warren Hill is a Pennsylvania-based company, with its owners also residing in Pennsylvania.  The transactions that are described below were designed to prevent Warren Hill from collecting on a judgment entered by a federal court in Pennsylvania in favor of a Pennsylvania-based entity, by stripping out of SFR assets that would otherwise have gone to satisfying the judgment in the related action.  Defendants knowingly engaged in such conduct, led by individuals who owned and controlled not only all Defendants, but also SFR.  Thus, Defendants engaged in conduct that was aimed at causing harm to Warren Hill here in Pennsylvania.  Because the brunt of this conduct, and thus its effects, were aimed at, and felt within, Pennsylvania by Warren Hill and its principals, this Court has personal jurisdiction over Defendants.

10.      This Court also has jurisdiction over Defendants because they conspired with Pennsylvania-based companies to complete the fraudulent transactions at issue.  As described below, one fraudulent transaction at issue involved the transfer of SFR's interest in BSF to AHG Holdings, HFP, and Gorovitz.  To accomplish these transactions, Defendants conspired with BSF, VAP, and the Chief Executive Officer of both companies, David Reape.  BSF and VAP are both headquartered, along with BCM, in Pennsylvania, within this District, where Mr. Reape maintains his corporate office.  Defendants know that VAP, BSF, and Mr. Reape are based in Pennsylvania and knew when transacting with VAP, BSF, and Mr. Reape that they were reaching into this forum.  By conspiring with individuals and entities within the forum, Defendants also subjected themselves to the jurisdiction of this Court.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Warren Hill resides in this District, harm was directed to and inflicted upon Warren Hill in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District, including, *inter alia*: the contract in dispute in the underlying litigation was entered into in Pennsylvania with a Pennsylvania entity; the underlying judgment—which Defendants are intentionally attempting to frustrate—was entered in this district; one of the fraudulent transactions described *infra* concerns the transfer of an interest in a Pennsylvania-based entity, BSF, which Defendants completed by reaching into this forum; numerous other fraudulent transactions described *infra* concerned the transfer of funds received from two other Pennsylvania-based entities, VAP and BCM.  Upon information and belief, additional acts giving rise to these claims may have occurred in this district, however, that documentation is in the exclusive possession of Defendants at this time.

### III.     THE PARTIES

12.     Plaintiff Warren Hill is an investment and private equity company based in Malvern, Pennsylvania.

13.     Defendant Neptune is a Florida limited liability company, whose members are also Florida citizens.  Defendant Neptune is located at 700 W. Morse Blvd., Suite 220, Winter Park, Florida.

14.     Defendant AHG Group is a Florida limited liability company, whose members are also Florida citizens.  Defendant AHG Group is located at 700 W. Morse Blvd., Suite 220, Winter Park, Florida.

15.     Defendant AHG Holdings is a Florida limited liability company, whose members are also Florida citizens.  Defendant AHG Holdings is located at 700 W. Morse Blvd., Suite 220, Winter Park, Florida.

16.     Defendant HFP is a Florida limited liability company, whose members are also Florida citizens.  Defendant HFP is located at 700 W. Morse Blvd., Suite 220, Winter Park, Florida.

17.     Defendant Gorovitz is a Florida limited partnership, whose partners are Florida citizens.  Defendant Gorovitz is located at 2006 Wayhaven Court, Maitland, Florida 32751.

18.     Defendant Gene Harris is an individual who resides in Florida.  Defendant Harris owns and/or controls the Entity Defendants and he directly participated in the tortious misconduct identified below.  Indeed, Defendant Harris is the Lead Manager of SFR and he manages and controls the Entity Defendants as well.  Defendant Harris personally participated in the transactions in this case, including the development of the transactions and the execution of the transactions.

19.     Defendant John and Jane Does 1-10 are individuals whose identities are unknown at this time, but who were the transferees in the challenged transactions, benefited from the challenged transactions, and/or directly participated in the challenged transactions.

20.     Defendant ABC Corps. 1-10 are companies whose identities are unknown at this time, but who were the transferees in the challenged transactions, benefited from the challenged transactions, and/or directly participated in the challenged transactions.

## IV.   FACTUAL ALLEGATIONS

### A.   THE WARREN HILL-SFR LITIGATION

21.     In or around 2012, Warren Hill invested in VAP.  Over the course of a few years, it acquired additional stakes in the company, ultimately holding approximately one-third (33%) of VAP in 2015.  The remainder of VAP's equity was divided among several other investors.

22.     In 2015, Warren Hill decided to sell its stake in VAP.  Warren Hill and SFR negotiated an agreement for the purchase of Warren Hill's entire stake in VAP.  The parties executed the Agreement, effective as of January 1, 2016.

23.     In exchange for Warren Hill's ownership interest in VAP, SFR agreed to make numerous payments to Warren Hill.  SFR failed to comply with the payment terms of the Agreement.  Beginning in early 2017, the parties engaged in numerous pre-litigation discussions concerning the parties' disputes.  Thereafter, Warren Hill initiated litigation with this Court, contending that SFR breached the Agreement in numerous respects. The Warren Hill-SFR litigation was filed on March 23, 2018.  The case was docketed at 2:18-cv-1228 and assigned to the Honorable Harvey Bartle III.  Judge Bartle presided over the entire case and has retained jurisdiction for purposes of post-judgment execution.

24.     At the heart of the dispute between Warren Hill and SFR was the creation of BSF and BCM, which SFR concealed from Warren Hill.  Specifically, SFR was required to pay Warren Hill an earnout payment based upon a percentage of VAP's "Revenue," as defined in the Agreement, as well other funds. But, SFR presented Warren Hill with "Revenue" figures that were knowingly, purposefully, and wrongfully deflated.

25.     SFR and its co-conspirators, including Defendants, used BSF and BCM to hide money from Warren Hill that should have rightfully been included in the earnout payments that

SFR owed under the Agreement.  For example, SFR and its co-conspirators claimed that nearly 80% of VAP's earned "Revenue" was actually earned by BSF or BCM.  The purpose of this fiction was to deflate—on fraudulent internal financial documents—the revenue that was earned by VAP, so that SFR could later argue that it owed Warren Hill less than it truly did.  Defendant Harris personally participated in, and stood to financially benefit from, the decision to hide money in BSF and BCM.

26.     The Court ultimately rejected SFR's repeated attempts to deflate what it owed Warren Hill under the Agreement.  Judge Bartle held that such funds were earned by VAP and thus had to be included as part of the earnout payment.  The Court made its initial ruling in this regard on February 8, 2019.  The Court confirmed its ruling, after SFR filed for reconsideration, on March 15, 2019.  The Court ruled on the issue a third time on July 23, 2019.  All three of these rulings are part of the public record.  The Court also rejected other attempts by SFR to deflate the amount it owed Warren Hill, including as to the scope of "Reserve Accounts" under Section 1.2(e) of the Agreement, and "Expenses" under Section 1.2(d), on July 23, 2019.

27.     After prevailing on these liability issues, Warren Hill moved for summary judgment on damages, which the Court granted on December 3, 2019.  The Court entered a final judgment totaling $6,226,688.19.  The Court also granted Warren Hill declaratory relief, that Warren Hill believes will ultimately be worth at least $2 million.

28.     SFR appealed the Court's ruling but did not post a bond.  SFR did not post a bond because it had taken prior steps, both in anticipation of litigation and during the pendency of the litigation, to render itself incapable of paying a judgment.  Having done so, SFR informed Warren Hill that Warren Hill would need to "chase" the money from SFR's affiliated entities and individual beneficiaries, as SFR no longer possessed it.  The transactions that are known to date

and the subject of this litigation against Defendants were undertaken by SFR and Defendants for the purpose of rendering SFR incapable of paying to Warren Hill what it is owed pursuant to a valid judgment entered in the Eastern District of Pennsylvania, and forcing Warren Hill to "chase" the money from insiders to whom SFR transferred its assets.

### B. THE VOIDABLE TRANSACTIONS KNOWN TO DATE

29.     Based on information known to date, this litigation addresses three sets of transactions that are fraudulent and voidable under applicable law.

#### 1. SFR TRANSFERS ITS VALUABLE INTEREST IN BSF TO INSIDERS

30.     BSF was created in or around March 2017, though it did not operate until November or December of 2017.  BSF was created by Mr. Harris, Mr. Reape, Mr. Brian Hynes, and Mr. Alan Wilson.

31.     BSF was used to hide money that was earned by VAP.  VAP operated under the Illinois Vendor Payment Program (the "Program").  The Program exists because Illinois had a history of not paying its bills on time, so qualified entities—vetted by Illinois—like VAP could purchase receivables from Illinois vendors and obtain the right to earn lucrative penalties paid by Illinois when Illinois ultimately paid its delinquent bills.

32.     The Program is governed by Program Terms promulgated by the State of Illinois, which impose specific requirements on entities, such as VAP, that are approved to participate in the Program. Tellingly, VAP did not disclose the existence of BSF, or BSF's alleged involvement in the Program, to Illinois.

33.     SFR and its co-conspirators secretly funneled millions of dollars to BSF, and later claimed in the Warren Hill-SFR litigation that the funds were "earned" by BSF.

34.     SFR owned a substantial interest in BSF—at one point nearing 50% —and therefore stood to receive substantial distributions from BSF given that BSF was gifted millions of dollars that had been earned by VAP under the Program.

35.     Rather than receiving such distributions and retaining them for purposes of paying a potential judgment, however, SFR transferred, for no consideration, its substantial ownership interest in BSF to three affiliated companies:  AHG Holdings, HFP, and Gorovitz.

36.     These three entities (AHG Holdings, HFP, and Gorovitz) are controlled by the same three individuals who are the ultimate beneficiaries of SFR: Alan Ginsburg controls AHG Holdings; Gene Harris controls HFP; and attorney Aaron Gorovitz controls Gorovitz.

37.     As a result of the transfer, distributions that would have otherwise flowed from BSF to SFR (totaling approximately $4.3 million in 2018 alone) were instead funneled to AHG Holdings, HFP, and Gorovitz.

38.     In other words, the three individuals that control SFR still had control over BSF's funds, but those funds were merely being held in a different entity they controlled that was, in Defendants' view, outside the scope of Judge Bartle's judgment against SFR.

39.     The transactions shifting assets from SFR to Defendants occurred after a dispute arose between Warren Hill and SFR and at a time when SFR anticipated, or was engaged in, litigation with Warren Hill.

40.     Defendant Harris personally participated in this transaction on both sides.  He made the decision, as SFR's Lead Manager, to transfer the interest to his company, HFP, and to AHG Holdings and Gorovitz.  Defendant Harris was also a manager of BSF, which approved the transaction between SFR and SFR's affiliates.

41.     These transactions between insiders are fraudulent and voidable.

10

### 2.    SFR TRANSFERS ITS INTEREST IN CHGO TO ITS PARENT COMPANY

42.     Second, as of at least December 2018, SFR owned a 50% interest in CHGO Real Estate Consultants, LLC ("CHGO").  CHGO was created by Illinois attorney and lobbyist, Brian Hynes.  That interest was exceptionally valuable, as CHGO received nearly $3 million in distributions from VAP and BCM in 2018.  Warren Hill believes, and therefore avers, that SFR, by virtue of its ownership interest in CHGO, would have been entitled to approximately half of this amount.

43.     Moreover, CHGO owns approximately 50% of BCM.  BCM stands to collect the proceeds from certain trust certificates, which, in turn, are valued at more than $10 million.  Upon information and belief, SFR—in the absence of attempts to dissipate or hide assets—would be entitled to approximately half of this trust certificate value.  This alone would satisfy a large portion of the judgment against SFR.

44.     However, Warren Hill just recently discovered, in connection with post-judgment filings in the related case, that SFR transferred its valuable interest in CHGO to SFR's parent company, Neptune.  Neptune, the transferee, is wholly owned by AHG Group, which also benefitted from the transfer.  Ultimately, both Neptune and AHG Group are owned by and/or controlled by Alan Ginsburg, Gene Harris, and Aaron Gorovitz.

45.     As a result of this transaction, Warren Hill believes, and therefore avers, that distributions that would have flowed to CHGO and, in turn, from CHGO to SFR, instead were routed to, or will be routed to, Neptune, skipping over SFR in an attempt to frustrate SFR's capability to satisfy the judgment it owes to Warren Hill.

46.     Again, the same three individuals in control of SFR also control Neptune, and thus retained control over funds flowing from CHGO, but simply in a different entity that is not the subject of Judge Bartle's judgment against SFR.

47.     Defendant Harris personally participated in this transaction as well, including in his role as Lead Manager for SFR.  Defendant Harris also owns, controls, and works for the entities that own Neptune, so he personally benefited from the transaction as well.

48.     This transaction between insiders is fraudulent and voidable.

### 3.     SFR DISTRIBUTES FUNDS TO INSIDERS

49.     Finally, in addition to transferring valuable assets, for no consideration, to insiders, SFR also distributed funds directly from its bank accounts to affiliated entities and/or individuals.

50.     SFR, by virtue of its ownership interests in VAP, BSF, BCM, and, for a period of time, CHGO, was entitled to, and did, receive monetary distributions directly into its own bank account(s).  These distributions occurred after SFR was aware of anticipated, threatened, or actual litigation with Warren Hill.   SFR also received other funds that, if not dissipated, could have been used to satisfy the judgment in the related matter.

51.     For example, in 2018, SFR received approximately $2 million in distributions from BCM.  These distributions were made in September and November of 2018, long after Warren Hill initiated the litigation.

52.     Similarly, in 2017, after a dispute with Warren Hill had already arisen, SFR received approximately $1.25 million from VAP, which amounts represented the repayment of loan obligations that VAP owed to SFR.  In 2018, SFR received in excess of $2.3 million from

VAP, more than $2 million of which was paid from VAP to SFR after Warren Hill initiated litigation with SFR.

53.     Warren Hill does not have access to SFR's financial statements or bank records for 2019 and 2020 at this time.  Warren Hill also does not have access to records that would show what, if any, distributions SFR received from CHGO prior to SFR fraudulently transferring its interest in CHGO to Neptune.  Upon information and belief, however, Warren Hill anticipates that SFR received funds directly from BCM and VAP in 2019, and anticipates that SFR received funds directly from CHGO in 2017 and 2018.

54.     Despite receiving more than $5.5 million in payments from VAP and BCM in 2017 and 2018—a time period when SFR was aware of anticipated, threatened, or actual litigation with Warren Hill—SFR is now claiming that it does not have funds to satisfy the judgment.  SFR has further instructed Warren Hill to go "chase" the money it once had.

55.     Warren Hill believes, and therefore, avers that the funds SFR received in 2017 and 2018, and any funds that it received in 2019 and thus far in 2020, have been distributed out of SFR and to its affiliated entities and individuals.  Warren Hill further believes that the recipients of these transfers include Defendants, and that the ultimate beneficiaries of the transfers include Defendants, Alan Ginsburg, Gene Harris, and Aaron Gorovitz.

56.     While the full extent of these transfers, including precise recipients and beneficiaries, will be revealed through discovery solely in the possession of Defendants, SFR, and other third parties, SFR has confirmed that the transfers did occur, such that SFR no longer possesses the funds to pay the Court's judgment in the related matter.  These transfers are fraudulent and voidable.

57.     As the Lead Manager of SFR, Defendant Harris personally participated in the dissipation of funds from SFR to SFR's affiliated individuals and entities.

### 4.    ADDITIONAL INSIDER ALLEGATIONS

58.     Defendants are all affiliated entities, which exist ultimately for the benefit of Alan Ginsburg, Gene Harris, and Aaron Gorovitz.

59.     SFR is owned by Neptune; Neptune is owned by AHG Group; and AHG Group is collectively owned by AHG Holdings and an entity ultimately owned by HFP and, Warren Hill believes, Gorovitz (or a Gorovitz affiliate).

60.     With the exception of Gorovitz, Defendants are located in the same building, and upon information and belief, share the same support staff, employees, and consultants.

61.     Defendants are indisputably affiliates and insiders with respect to each other. Together with additional related companies and partnerships, Defendants form a web of interconnected entities under common control and ownership.

62.     In fact, Defendants are so interrelated that they have even made political contributions to Illinois politicians on each others' behalf. For example, Illinois public campaign finance disclosures show that each of AHG Holdings, SFR, BSF, and BCM contributed to the Friends of Susana Mendoza for Comptroller political committee. As the Comptroller of the State of Illinois, Ms. Mendoza oversees the Illinois Vendor Payment Program. Moreover, each of Neptune, BCM, BSF, and SFR contributed to the Senate Democratic Victory Fund in Illinois.

63.     Upon information and belief, AHG Holdings, Neptune, and SFR lack material connections to Illinois other than: (1) their pecuniary interests in the operation of the Program by virtue to their affiliate, VAP, operating as a Qualified Purchaser within the Program and (2) their pecuniary interests in the operations of a new affiliated company called Munibuy, LLC, which

shares the same Winter Park, Florida address as several Defendants and the same Chicago address as VAP.  And while BCM and BSF, both of which also made political contributions in Illinois, do not operate openly in that state, they do profit from the public-facing operations of VAP within the Program.

64.     The Boards of Managers of BCM, BSF, and VAP, which are composed of the same six individuals, each include Gene Harris, and Illinois political operatives Brian Hynes and Malcolm Weems. In fact, these same three individuals control CHGO, in which SFR had a substantial interest before Defendants transferred that interest to Neptune, SFR's parent company.

**COUNT I**
**V**IOLATION OF **P**ENNSYLVANIA'S **U**NIFORM **V**OIDABLE **T**RANSACTIONS **A**CT

65.     Warren Hill repeats and realleges all prior paragraphs of this Complaint as if set forth fully herein.

66.     Warren Hill is a judgment creditor of SFR pursuant to a judgment entered in the related case *Warren Hill, LLC v. SFR Equities, LLC*, Case No. 2:18-cv-1228 (E.D.Pa.) (Bartle, J.)

67.     Defendants, and those who control Defendants, caused SFR to make numerous transfers with the intent to hinder, delay, or defraud Warren Hill from collecting on a potential, and later actual, judgment against SFR.

68.     Defendants, and those who control Defendants, further caused SFR to be incapable of paying an actual or anticipated judgment in favor of Warren Hill.

69.     Defendants were either the transferees of, or persons/entities who benefitted from, the transfer of SFR's interest in BSF to AHG Holdings, HFP, and Gorovitz.

15

70.     Defendants were either the transferees of, or persons/entities who benefitted from, the transfer of SFR's interest in CHGO to Neptune.

71.     Defendants participated in the fraudulent transactions at issue, including Defendant Harris, who personally orchestrated the transactions from both ends of the deal, as Lead Manager for SFR and as an individual with ownership and/or control of entities who received or benefited from the challenged transactions.

72.     Defendants, John and Jane Does, and/or ABC Corps, upon information and belief, were either the transferees of, or persons/entities who benefitted from, SFR's transfer of funds from its possession.

73.     In executing these transfers and transactions, Defendants acted with the intent to defraud Warren Hill, including because:

        a)      The voidable transfers or transactions were made to insiders, *i.e.*, companies that were affiliated with SFR and that were controlled and/or owned by a common set of entities and individuals, the ultimate beneficiaries of which were Alan Ginsburg, Gene Harris, and Aaron Gorovitz;

        b)      Defendants, and the individuals who control and/or own Defendants, such as Alan Ginsburg, Gene Harris, and Aaron Gorovitz, retained actual or constructive possession and control of the assets transferred from SFR to themselves, including because the stream of money deriving from SFR's pre-transfer assets was merely delivered to direct affiliates of SFR, whose ultimate beneficiaries remained the same;

        c)      Defendants received, or benefitted from, the challenged and voidable transfers because the transfers represented all, or nearly all, of SFR's assets, which would have otherwise been available to pay Warren Hill's judgment;

d)      Defendants made the challenged and voidable transfers without Warren Hill's knowledge;

e)      Defendants made the challenged and voidable transfers with full knowledge of SFR's obligations to Warren Hill under the Agreement, and Defendants made such transfers at a time when SFR was aware of anticipated or threatened litigation between SFR and Warren Hill, or at a time when SFR was in active litigation with Warren Hill;

f)      Defendants made the transfers intentionally to render SFR unable to satisfy its debts and obligations, including anticipated debts and obligations; and

g)      SFR received no consideration, or inadequate consideration, for the transfers effectuated by Defendants;

74.      Based on the forgoing allegations, Defendants have engaged in actual and constructive fraud, in violation of the law.

75.      Defendants fraudulently conveyed assets of SFR, and in the process knew or should have known that by doing so they would leave SFR insolvent and unable to pay its debts, including to Warren Hill.

76.      Warren Hill believes, and therefore alleges, that Defendants engaged in this misconduct willfully and maliciously, for the knowing and intentional purpose of harming Warren Hill in an unlawful manner and/or in reckless disregard of the fact that their actions were likely to cause substantial harm to Warren Hill, such that Defendants are liable for punitive damages.

77.      Warren Hill is entitled to a judgment against Defendants, jointly and severally, in the amount of the value of the assets transferred in violation of Pennsylvania law.

78.     In addition and in the alternative, Warren Hill is entitled to an order requiring, *inter alia*, that the above-referenced transfers be deemed void, and that all assets of SFR transferred as set forth herein, and the proceeds therefrom, be returned to SFR and then attached and transferred to Warren Hill in the amount necessary to satisfy Warren Hill's claims.

WHEREFORE, Plaintiff Warren Hill respectfully requests that this Court enter judgment in its favor and against Defendants, in an amount in excess of $150,000.00, including punitive damages, attorneys' fees, costs, and all such other legal and equitable relief that the Court deems just and proper.

## COUNT II
### UNJUST ENRICHMENT

79.     Warren Hill repeats and realleges all prior paragraphs of this Complaint as if set forth fully herein.

80.     As set forth above, Defendants knew that Warren Hill was entitled to assets and funds of SFR that SFR unlawfully withheld from Warren Hill under the terms of the Agreement.

81.     Yet, as set forth above, Defendants engaged in a series of fraudulent and/or voidable transfers knowingly, willfully, and maliciously, intending to conceal assets and leave SFR insolvent, while retaining the benefit of SFR's pre-transfer assets, in order to frustrate Warren Hill's ability to collect on its valid judgment against SFR.

82.     As a result, it would unconscionable to permit Defendants to retain the use and benefit of SFR's assets and funds.

83.     Defendants have been unjustly enriched in the amount transferred from SFR that otherwise should have been used to satisfy Warren Hill's valid judgment against SFR.

WHEREFORE, Plaintiff Warren Hill respectfully requests that this Court enter judgment in its favor and against Defendants, in an amount in excess of $150,000.00, including punitive

damages, attorneys' fees, costs, and all such other legal and equitable relief that the Court deems just and proper.

## JURY DEMAND

Warren Hill hereby respectfully demands a jury trial pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(a).

ELLIOTT GREENLEAF, P.C.

Gregory S. Voshell
gsv@elliottgreenleaf.com
Thomas B. Helbig
tbh@elliottgreenleaf.com
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

*Counsel for Plaintiff Warren Hill, LLC*

JS 44 (Rev 02/19)

**CIVIL COVER SHEET**

20-CV-452

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM )*

**I. (a) PLAINTIFFS**

Warren Hill, LLC

**(b)** County of Residence of First Listed Plaintiff    Chester
*(EXCEPT IN U S  PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gregory S  Voshell, Esq
Thomas B  Helbig, Jr , Esq

**DEFENDANTS** Neptune Investors, LLC, AHG Group, LLC, AHG Group Holdings, LLC, HFP Investors, LLC, Gorovitz Family Limited Partnership, Gene Harris, John and Jane Does 1-10, ABC Corps 1-10

County of Residence of First Listed Defendant
*(IN U S  PLAINTIFF CASES ONLY)*
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
        THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1  U S  Government Plaintiff | ❏ 3  Federal Question *(U S  Government Not a Party)* |
| ❌ 2  U S  Government Defendant | ❌ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❌ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❌ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for  Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & | ❏ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 340 Marine | Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 350 Motor Vehicle | ❌ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 190 Other Contract | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 485 Telephone Consumer Protection Act |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 196 Franchise | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ Exchange |
| | | | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 870 Taxes (U S  Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 899 Administrative Procedure Act/Review or Appeal of |
| ❏ 245 Tort Product Liability | ❏ 445 Amer  w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| ❏ 290 All Other Real Property | ❏ 446 Amer  w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | ❏ 950 Constitutionality of State Statutes |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ❌ 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from Another District *(specify)* | ❏ 6 Multidistrict Litigation - Transfer | ❏ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**
Cite the U S  Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
28 U S C  1332
Brief description of cause
Fraudulent and voidable transfers

**VII. REQUESTED IN COMPLAINT:**   ❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P
**DEMAND $**  In excess of $150,000.00
CHECK YES only if demanded in complaint
**JURY DEMAND:**   ❌ Yes   ❏ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions)*   JUDGE  Honorable Harvey Bartle, III   DOCKET NUMBER  2 18-cv-1228

DATE  01/27/2020

SIGNATURE OF ATTORNEY OF RECORD

JAN 27 2020

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG JUDGE

HB

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

20cv452

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __914 Sorrell Drive, Malvern, PA 19355__

Address of Defendant: __700 West Morse Blvd., Suite 220, Winter Park, Florida 32789__

Place of Accident, Incident or Transaction: __Pennsylvania__

**RELATED CASE, IF ANY:**

Case Number: __2:18-cv-1228__          Judge: __Harvey Bartle III__          Date Terminated: __12/3/2019__
Post-judgment proceedings ongoing

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [X]  No [ ]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [X]  No [ ]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [X] is / [ ] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __1/27/2020__          _____          __208566__
                              Attorney-at-Law / Pro Se Plaintiff          Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A          Federal Question Cases:**

1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [ ] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify)* _____

**B.          Diversity Jurisdiction Cases:**

1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify)* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [X] All other Diversity Cases
    *(Please specify)* __Fraudulent Conveyance__

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Gregory S. Voshell__, counsel of record or pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

JAN 27 2020

DATE: __1/27/2020__          _____          __208566__
                              Attorney-at-Law / Pro Se Plaintiff          Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

WARREN HILL, LLC                          :        CIVIL ACTION
                                          :
                 v.                       :
                                          :
NEPTUNE INVESTORS, LLC, AHG GROUP, LLC, AHG GROUP HOLDINGS, :
LLC, HFP INVESTORS LLC, GOROVITZ FAMILY LIMITED PARTNERSHIP, :   NO.   20cv452
GENE HARRIS, JOHN AND JANE DOES 1-10, & ABC CORPS. 1-10      :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.               (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                       (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( x )

| | | |
|---|---|---|
| January 27, 2020 | Gregory V. Vosell | Plaintiff Warren Hill, LLC |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-977-1000 | 215-977-1099 | gsv@elliottgreenleaf.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JAN 27 2020