IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WARREN HILL, LLC                    :           CIVIL ACTION
                                    :
        v.                          :
                                    :
NEPTUNE INVESTORS, LLC, et al.      :           NO. 20-0452

MEMORANDUM

Bartle, J.                                              May 5, 2020

        Plaintiff Warren Hill, LLC ("Warren Hill") brings this
diversity action for violations of the Pennsylvania Uniform
Voidable Transaction Act ("PUVTA"), 12 Pa.C.S. § 5101, et seq.,
and for unjust enrichment against defendants Neptune Investors,
LLC ("Neptune"), AHG Group, LLC ("AHG Group"), AHG Group
Holdings, LLC ("AHG Holdings"), HFP Investors, LLC ("HFP"),
Gorovitz Family Limited Partnership ("Gorovitz"), CHGO Real
Estate Consulting Group, LLC ("CHGO"), Gene Harris, John and
Janes Does 1-10, and ABC Corps. 1-10.  Before the court is the
motion of the named defendants to dismiss the amended complaint
under Rule 12(b)(2) of the Federal Rules of Civil Procedure for
lack of personal jurisdiction and under Rule 12(b)(3) and
28 U.S.C. § 1406(a) for improper venue.

                                I

        Warren Hill alleges that the defendants in conspiracy
with SFR Equities, LLC ("SFR") and other non-parties have been
involved in the fraudulent transfer of assets so as to interfere

with the satisfaction of a judgment in the amount of $6.2
million this court entered on December 3, 2019 in favor of
Warren Hill and against SFR in Warren Hill, LLC v. SFR Equities,
LLC, Civil Action No. 18-1228.  SFR has appealed the judgment
but has not posted a bond to stay execution.

Warren Hill avers that SFR and the defendants form a
web of affiliated holding companies which exist for the benefit
of three individuals: defendant Gene Harris, Alan Ginsburg, and
Aaron Gorovitz.  The defendants, for the benefit of these
individuals, conspired among themselves - and with non-parties
SFR, Bluestone Capital Markets, LLC ("BCM"), Blue Stone
Financial, LLC ("BSF"), and Vendor Assistance Program, LLC
("VAP") - to cause the fraudulent transfers.

According to the amended complaint, the judgment
debtor SFR is owned by defendant Neptune which in turn is owned
by defendant AHG Group.  Neptune and AHG Group are collectively
owned and/or controlled by defendants AHG Holdings, Gorovitz,
and HFP.  AHG Holdings, Gorovitz, and HFP are in turn owned for
the benefit of, and controlled by, defendant Gene Harris, Alan
Ginsburg, and Aaron Gorovitz.  Warren Hill alleges the
defendants are in the same building, share staff, employees, and
consultants, and make political contributions on one another's
behalf.

-2-

Warren Hill identifies in detail the fraudulent transfers effected by the defendants.  First, from the commencement of the underlying action on March 23, 2018 to the end of 2019, Warren Hill alleges SFR distributed more than $26 million to defendants Neptune and CHGO, co-conspirator BCM, and others.  Second, some time before December 2018, SFR transferred to Neptune for no consideration its 50% ownership interest in CHGO.  Finally, SFR also transferred for no consideration its ownership interest in co-conspirator BSF to defendants AHG Holdings, HFP, and Gorovitz.  Warren Hill alleges that as a result of this transfer approximately $4.3 million which would have flowed to SFR in 2018 was instead funneled to AHG Holdings, HFP, and Gorovitz.

Warren Hill avers that co-conspirators BSF and VAP share the same chief executive officer, David Reape, and, along with BCM, are headquartered in the Eastern District of Pennsylvania where Mr. Reape maintains his corporate office. Defendant Gene Harris manages all the named entity defendants except Gorovitz.[1]  Mr. Harris has admitted he communicated with Mr. Reape about some of the transfers identified in the amended

---

1.   Mr. Harris attests he is the Manager of AHG Manager, LLC which is the Manager of SFR, AHG Group, AHG Holdings, Neptune, and CHGO.  He also attests he is the Manager of Bluerock Investment Management, LLC which is the Manager of HFP.

complaint and that these communications may have occurred while Mr. Reape was in Pennsylvania.

II

Defendants first move to dismiss the amended complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that this court lacks personal jurisdiction over them.

The plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendants. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). When deciding such a motion without holding an evidentiary hearing, the court takes the factual allegations in the amended complaint as true and draws all factual disputes in favor of the plaintiff. Id.

A state may exercise personal jurisdiction over a defendant consistent with its long-arm statute and the due process clause of the United States Constitution. Pennsylvania exercises personal jurisdiction to the extent allowed by the United States Constitution so that the analysis is conflated. See 42 Pa.C.S. § 5322(b). As stated many years ago in International Shoe, a defendant must have minimum contacts with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)

-4-

(internal quotations omitted).  In a diversity action such as this, federal courts generally follow these limitations on jurisdiction over the person.  Daimler AG v. Bauman, 571 U.S. 117, 124-26 (2014).

As stated above, plaintiff contends that the defendants have conspired among themselves and with other non-parties to violate Pennsylvania's Uniform Voidable Transaction Act, 12 Pa.C.S. § 5101, et seq.  Plaintiff also pleads a claim for unjust enrichment.  Specifically, plaintiff alleges that it obtained a judgment against SFR in this court in the amount of $6.2 million in Warren Hill, LLC v. SFR Equities, LLC, Civil Action No. 18 1228, 2019 WL 6498060 (E.D. Pa. Dec. 3, 2019).  In essence, plaintiff avers that the defendant co-conspirators and others fraudulently transferred over $26 million from SFR to themselves and others in order to obstruct Warren Hill's ability to collect its judgment against SFR.

The plaintiff maintains that the court has personal jurisdiction over the defendants because the torts in question, that is the fraudulent transfers of funds, while occurring outside of Pennsylvania, were directed at Pennsylvania where the judgment was obtained, where the plaintiff is located, and where the harm occurred.  We begin with the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984).

-5-

There, the plaintiff, a resident of California sued a reporter and the editor of the National Enquirer for defamation in a California state court as a result of an article about the plaintiff appearing in its publication.  The National Enquirer was published in Florida but had its largest circulation in California.  The defendants were residents of Florida and had virtually no personal contact with California.  The Supreme Court held that the California court had personal jurisdiction over the defendants on the ground that their intentional torts "were expressly aimed at California," "would have a potentially devastating impact upon respondent," and that the defendants "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works."  Calder, 465 U.S. at 790-91.

Our Court of Appeals has summarized the "effects test" of Calder as follows: (1) "the defendant must have committed an intentional tort"; (2) "the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort"; and (3) "the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity."  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 256 (3d Cir. 1998).

-6-

The defendants here concede that plaintiff has met the first two requirements of Calder but challenge that they have expressly aimed "any tortious conduct" at Pennsylvania.  It must be accepted as true at this stage of the litigation based on the plausible allegations in the amended complaint that at least some of the defendants and their co-conspirators kept abreast of this court's adverse rulings culminating in the entry of judgment against SFR on December 3, 2019 in the underlying lawsuit.  They clearly knew that the plaintiff was located in Pennsylvania and that harm would come to plaintiff in Pennsylvania if the judgment entered in Pennsylvania was not honored.  Defendant Gene Harris, although a resident of Florida, is the lead manager of SFR.  He manages and controls the entity defendants and, according to the amended complaint, participated in the fraudulent transfer at issue.  Moreover, as noted above, Mr. Harris communicated with David Reape, the Pennsylvania-based chief executive officer of BSF and VAP, about some of the transfers.

Based on specific allegations pleaded in the amended complaint and the record before the court, there can be little doubt that defendant Harris at the very least "expressly aimed" the intentional tortious conduct, that is fraudulent transfers of assets, at Pennsylvania and this forum.  Our Court of Appeals, as well as other courts in this district, support the

proposition that an intentional tort seeking to thwart the
payment of a judgment is expressly aimed at the forum where
judgment was entered.  Gambone v. Lite Rock Drywall, 288 F.
App'x 9, 13-14 (3d Cir. 2008); Allied World Ins. Co. v. Perdomo
Indus., LLC, Civil Action No. 19-2467 (E.D. Pa. December 5,
2019), Doc. # 38; Eddystone Rail Co., LLC v. Rios, 2018 WL
5920746, at *4 (E.D. Pa. Nov. 13, 2018); DCK/TTEC, LLC v.
Postel, 2015 WL 2341284, at *4 (W.D. Pa. May 14, 2015); Brocious
Trucking, Inc. v. BFL, Inc., 2010 WL 569559, at *2 (W.D. Pa.
Feb. 11, 2010); State Farm Mut., Auto. Ins. Co. v. Tz'doko
V'CHESED of Klausenberg, 543 F. Supp. 2d 424, 430-31 (E.D. Pa.
2008).

The defendants' reference to the Supreme Court's
decision in Walden v. Fiore, 571 U.S. 277 (2014), is misplaced.
In Walden, a Nevada resident sued a Georgia resident in the
United States District Court for the District of Nevada for
damages in a Bivens action.  See Bivens v. Six Unknown Named
Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  The
defendant, a DEA agent, had allegedly seized money illegally
from the plaintiff at an airport in Atlanta and had filed a
false affidavit in a forfeiture action there.  The Supreme Court
held the that the United States District Court in Nevada did not
have personal jurisdiction.  The Court emphasized that the
defendant's conduct "must create a substantial connection with

-8-

the forum state." Walden, 571 U.S. at 284.  The affiliation with the forum state cannot be based on the "random, fortuitous, or attenuated contacts [the defendant] makes by interacting with other persons affiliated with the State." Id. at 286.

There, the DEA agent, a Georgia residence, did not have the requisite minimum contact with Nevada. In contrast, in this case, the defendants have a substantial connection with Pennsylvania through their efforts to interfere with a judgment entered by this court sitting in Philadelphia in the Eastern District of Pennsylvania.  In the words of Calder, their intentional tortious conduct was "expressly aimed" at this forum.

The defendants also stress that some of the defendants have little or no contact or connection with Pennsylvania. While this may be true, the amended complaint plausibly alleges that they conspired with others, such as BSF, BCM and VAP, which share the same Pennsylvania-based chief executive officer, to effect the transfers.[2]  This court can exercise personal jurisdiction over all of the defendants as long as they are co-conspirators with others who do have the necessary minimum

---

2.   Mr. Harris attests that the citizenship of BSF, BCM, and VAP differs from plaintiff's allegations.  Nothing Mr. Harris states, however, effects diversity of citizenship.  The court need not resolve this dispute to determine whether we have personal jurisdiction or whether venue is proper in this district.

contacts to satisfy due process.  Byrd v. Aaron's, Inc., 14 F.
Supp. 3d 667, 681 (W.D. Pa. 2014); Koresko v. Bleiweis, Civil
Action No. 04-0769, 2005 WL 2436693, at *3 n. 3 (E.D. Pa. Sept.
27, 2005); Ethanol Partners Accredited v. Wiener, Zuckerbrot,
Weiss & Brecher, 635 F. Supp. 15, 17-18 (E.D. Pa. 1985).

        Plaintiff has also asserted a claim for unjust
enrichment based on virtually the same allegations in the
amended complaint as to violation of the Pennsylvania Uniform
Voidable Transaction Act.  The defendants correctly argue that
the court must analyze each claim for relief separately to
determine whether it has personal jurisdiction over the
defendants as to that claim.  We agree.  See Miller Yacht Sales,
384 F.3d at 104.

        A claim for unjust enrichment under Pennsylvania law
rests on the principle that it would be unconscionable for a
party to retain a benefit it either wrongly secured or passively
received.  Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super.
1985).  We see no difference for purposes of personal
jurisdiction over the defendants between the claim for unjust
enrichment and for fraudulent transfer under the Pennsylvania
Uniform Voidable Transaction Act.

        For these reasons, we will deny the motion of the
defendants to dismiss the amended complaint for lack of personal

jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

                                   III

          The defendants also move to dismiss the amended complaint under Rule 12(b)(3) and 28 U.S.C. § 1406(a)[3] on the ground that venue in this district is improper.

          28 U.S.C. § 1391(b)(2) provides:

> A civil action may be brought . . . (2) in a judicial district in which a <u>substantial part of the events or omissions giving rise to the claim occurred</u>, or a substantial part of property that is the subject of the action is situated.  (emphasis added).

          When reviewing a motion to dismiss for improper venue, we take as true the factual allegations in the amended complaint which bear on the issue of venue unless they are contradicted by a defendant's affidavit.  <u>Bockman v. First Am. Mktg. Corp.</u>, 459 F. App'x 157, 158 n. 1 (3d Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 324 (3d ed. 2004).  In the Third Circuit, it is the defendants that bear the burden of proving improper venue.  <u>Id.</u>;

---

3.   Section 1406(a) reads:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

<u>Great W. Min. & Mineral Co. v. ADR Options, Inc.</u>, 434 F. App'x 83, 86 (3d Cir. 2011); <u>Myers v. American Dental Ass'n, 695 F.2d 716</u>, 724-25 (3d Cir. 1982); <u>see also</u> 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2017).

Unlike personal jurisdiction, we do not look to a defendant's contacts to determine whether venue is proper under § 1391(b)(2).  <u>Cottman Transmission Sys., Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994).  Rather, we must determine whether a "substantial part of the events or omissions" which gave rise to a plaintiff's claim occurred in the district in which the action was filed.  <u>Id.</u> (citing 28 U.S.C. § 1391(b)(2)).

Although § 1391(b)(2) does not preclude a substantial part of the events or omissions which give rise to a claim to occur in more than one district, incidental events such as correspondence and phone calls directed into a district may be insufficient for venue to lay, even where a plaintiff's injury occurred in the district.  <u>Loeb v. Bank of Am.</u>, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) (citing <u>Cottman</u>, 36 F.3d at 294). Moreover, venue is not proper in a district simply because a defendant fraudulently transfers assets to thwart the contractual rights of a party who resides in the district.  <u>Am. Trade Partners, L.P. v. A-1 Int'l Importing Enterprises, Ltd.</u>, 757 F. Supp. 545, 558-59 (E.D. Pa. 1991).  Rather, such

-12-

transfers occur in the district or districts where the transfers took place. Id.

Defendants cite to Cottman, Loeb, and American Trade Partners to argue that neither Warren Hill's residency, nor the defendants' and co-conspirators' activities render venue in this district proper because the transfers at issue occurred outside the district between Florida entities. This argument misses the mark.

Plaintiffs allege that the defendants effected the transfers at issue to frustrate a judgment entered by this court in this district and have been unjustly enriched as a consequence. Regardless of where the transfers occurred, the judgment and the litigation which culminated in its entry are a "substantial part" of the events which gave rise to plaintiff's fraudulent transfer claim. There is no shortage of case law in this Circuit to support the proposition that venue in an action for fraudulent transfer designed to obstruct the collection of a judgment properly exists in the district in which the judgment was entered. Allied World Ins., Civil Action No. 19-2467, Doc. # 38; DCK/TTEC, LLC, 2015 WL 2341284, at *7; State Farm Mut., Auto. Ins., 543 F. Supp. 2d at 427-34; C.D. Acquisition Holdings, Inc. v. Meinershagen, Civil Action No. 05-1719, 2007 WL 184796, at *7-8 (W.D. Pa. Jan. 22, 2007).

Similar to our analysis of personal jurisdiction, we see no difference for purposes of venue between plaintiff's claims for unjust enrichment and fraudulent transfer under the Pennsylvania Uniform Voidable Transaction Act.

For these reasons we will also deny the motion of the defendants for dismissal under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) for improper venue.