IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN HILL, LLC | : | CIVIL ACTION |
| v. | : | |
| NEPTUNE INVESTORS, LLC, et al. | : | NO. 20-452 |

MEMORANDUM

Bartle, J.                                                           May 20, 2021

        Plaintiff Warren Hill LLC ("Warren Hill") has sued defendants Neptune Investors LLC, AHG Group LLC, AHG Group Holdings LLC, HFP Investors LLC, Gorovitz Family Limited Partnership, Gene Harris, and CHGO Real Estate Consulting Group LLC ("defendants") in this diversity action under the Pennsylvania Uniform Voidable Transactions Act, 12 Pa. C.S. §§ 5101 et seq. ("PUVTA"), and for unjust enrichment. Warren Hill claims that SFR Equities LLC ("SFR") fraudulently transferred assets to defendants so as to undermine SFR's ability to pay the judgment of $6,226,688.19 entered by this court against SFR and in favor of Warren Hill in <u>Warren Hill, LLC v. SFR Equities, LLC</u>, Civil Action No. 18-1228.[1] Warren Hill seeks to recover from defendants in this action the amount due from SFR.

---

1. The judgment also includes a declaration regarding a percentage of additional income received by SFR and due to Warren Hill.

Before the court is Warren Hill's motion to exclude at trial the testimony of defendants' expert, Kevin Couillard, on the issue of SFR's solvency as of January 1, 2018.

I

Warren Hill filed a complaint in the underlying action against SFR on March 23, 2018 for breach of contract. Warren Hill claimed that SFR had violated the terms of the "Membership Interest Purchase Agreement" ("MIPA") between the two parties governing the sale to SFR of Warren Hill's stake in a company called Vendor Assistance Program, LLC ("VAP") by failing to pay Warren Hill the full obligation it owed under the MIPA.

VAP exists because of the inability or unwillingness of the State of Illinois ("the State") to pay its bills on time. VAP was established in 2011 as a qualified purchaser to buy accounts receivable from vendors of the State under the Vendor Payment Program ("VPP"), a program instituted by the State to ensure its vendors are promptly compensated. To purchase the accounts receivable, VAP makes use of Delaware statutory trusts. The State, at some later time, repays the qualified purchaser and includes a substantial interest penalty. After all the fees and expenses are paid regarding the trusts, the trust certificate holder is left with a profit known as "trust certificate income."

Warren Hill sold its interest in VAP to SFR, effective January 1, 2016, in exchange for SFR's agreement pursuant to the MIPA to pay Warren Hill a sum certain plus additional sums based on subsequent events, including a portion of VAP's income and reserve for 2016, 2017, and 2018.

On July 23, 2019, this court granted summary judgment in the underlying action in favor of Warren Hill on the issue of liability on the ground that SFR had not paid its full obligation to Warren Hill under the MIPA. On December 3, 2019, this court granted summary judgment in favor of Warren Hill as to damages and ordered SFR to pay $6,226,688.19 to Warren Hill. This court also entered declaratory judgment in favor of Warren Hill and ordered SFR to pay 16.623% of all funds, including trust certificate income, for 2016, 2017, and 2018 not yet released by the trusts to VAP. The Court of Appeals affirmed. Warren Hill, LLC v. SFR Equities, LLC, Appeal No. 20-1026 (Feb. 16, 2021).

Pursuant to the PUVTA, Florida law applies in this action since the location of the judgment-debtor SFR and of all defendants is Florida. See 12 Pa. C.S. § 5110. One of the crucial questions here is whether SFR was insolvent as of January 1, 2018. See Fla Stat. § 726.106. Warren Hill alleges that SFR transferred significant assets to defendants, which are

3

all affiliated entities, to avoid paying what is owed and that SFR was made insolvent as a result of these transfers.

Warren Hill has retained expert Jeffrey Buchakjian to testify that SFR was insolvent as of January 1, 2018. Defendants seek to use Kevin Couillard as an expert to rebut the testimony of Buchakjian.

On November 16 and 17, 2020, the court held an evidentiary hearing in this action on Warren Hill's motion for a preliminary injunction to compel defendants to set aside assets to protect its judgment against SFR in the underlying action. On December 15, 2020, the court preliminarily enjoined defendants from transferring or otherwise alienating assets with the value of $8,523,630 without court approval unless defendants chose to post a security bond in the same amount.[2]

On January 13, 2021, defendants filed a notice of appeal as to the preliminary injunction. Warren Hill, LLC v. Neptune Investors, LLC, Appeal No. 21-1080. That appeal is currently pending.

---

2. The court found that Warren Hill had a reasonable probability of success on the merits and that Warren Hill would be irreparably harmed without the entry of a preliminary injunction as defendants were reasonably likely to dissipate their assets. Moreover, the harm to Warren Hill without injunctive relief would outweigh any harm to defendants if such relief were granted. Finally, the court's decision served the public interest. See Doc. #98; see also Reilly v. City of Harrisburg, 858 F.3d 173, 176-79 (3d Cir. 2017).

At the preliminary injunction hearing, Warren Hill presented Buchakjian as an expert, and defendants presented Couillard. The court found Buchakjian to be credible and relied on his testimony in granting injunctive relief. The court permitted Couillard to testify over the objection of Warren Hill. Without deciding whether his testimony met the requirements of Rules 702 and 703 of the Federal Rules of Evidence, the court allowed Couillard to appear as a witness on the ground that no jury was present, and the court was the fact-finder. Warren Hill now moves to exclude Couillard's testimony at any future trial as a jury has been demanded.

II

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The preeminent case on Rule 702 is <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> in which the Supreme Court explained that "under the [r]ules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993). This standard also applies to "technical" and "other specialized" knowledge under Rule 702 and not just to "scientific" knowledge. <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 141 (1999).

Testimony is relevant if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." <u>Daubert</u>, 509 U.S. at 591. Reliability requires that the testimony "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" <u>Schneider ex rel. Estate of Schneider v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003). Experts are permitted "wide latitude to offer opinions." <u>Daubert</u>, 509 U.S. at 592.

This inquiry under Rule 702 is a "flexible one" that is focused "solely on principles and methodology, not on the conclusions that they generate." <u>Id.</u> at 594-95. Some factors that a court might consider when evaluating the principles and methodology underlying expert testimony, though not the only factors the court may consider, are whether the theory can be tested, whether it has been subject to peer review, what the rate of error is, and whether the theory is generally

6

acceptable. Id. at 593-94. Other factors include the expert's qualifications and the method's non-judicial uses. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994).

The court operates in a "gatekeeping role" that ensures that the testimony "both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. This gatekeeping prevents opinion testimony that does not meet these requirements from reaching the jury. Schneider, 320 F.3d at 404. The party presenting the expert need not show that the opinions of the expert are correct but rather that by a preponderance of the evidence the opinions of the expert are reliable. In re Paoli, 35 F.3d at 744. Instead "[t]he analysis of the conclusions themselves is for the trier of fact." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 807 (3d Cir. 1997). The judge as the gatekeeper may find flaws in an expert's methodology, disagree with the conclusions of the expert, and believe there are better grounds for a different conclusion but still permit the expert to testify because there are "good grounds to hold the opinion that he or she does even though the judge thinks that the opinion is incorrect." In re Paoli, 35 F.3d at 744.

Thus, "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence." Id. "The Rules of Evidence embody a strong and

undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." Kannankeril, 128 F.3d at 806. Rule 702 "has a liberal policy of admissibility." Id.

The opposing party may attack expert testimony using "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 595. The court's gatekeeping role "is not intended to serve as a replacement for the adversary system" which an opponent may use to "expose flawed expertise." United States v. Mitchell, 365 F.3d 215, 244-45 (3d Cir. 2004).

While the court looks to relevance and reliability, "issues of credibility arise after the determination of admissibility. Credibility is for the jury." Kannankeril, 128 F.3d at 809-10. The jury is also tasked with making "[d]eterminations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert." Walker v. Gordon, 46 F. App'x 691, 695 (3d Cir. 2002).

III

Our Court of Appeals has explained that Rule 702 requires expert testimony to meet three standards: "qualification, reliability and fit." Schneider, 320 F.3d at 404. Qualification requires the expert to have specialized expertise, and fit requires the testimony to fit the issues of

8

the case so that it is relevant in assisting the trier of fact. Id. The focus of Warren Hill's arguments against Couillard is the reliability of his testimony.[3]

Defendants hired Kevin Couillard as a rebuttal witness to rebut the testimony of Warren Hill's expert, Jeffrey Buchakjian. Couillard's background is in business valuations. He is a chartered financial analyst ("CFA") and an accredited senior appraiser ("ASA") in business valuation. As part of this work, he has performed analyses to render an opinion on the solvency of a business.

Couillard was offered at the preliminary injunction hearing solely to rebut the analysis of Buchakjian with respect to the solvency of SFR as of January 1, 2018. Buchakjian opined that SFR was insolvent as of that date while Couillard opined to the contrary. Couillard did not offer any opinions on the value or worth of any of the defendants or related entities.

The parties are in agreement that SFR had approximately $11,191,000 in assets as of January 1, 2018 but disagree as to the value of SFR's liabilities at that time.

---

3. Warren Hill states in its brief in support of its motion to exclude that it does not challenge Couillard's qualifications but that his level of expertise may affect the reliability of his opinion. See Elcock v. Kmart Corp., 233 F.3d 734, 749 (3d Cir. 2000). As Warren Hill does not dispute Couillard's qualifications, we accept him as qualified to render expert testimony and will only address the reliability of that testimony.

9

Buchakjian testified that SFR had approximately $17,118,324 in liabilities. That amount is broken down as follows:

| | |
|---|---|
| Neptune Investors LLC Loan | $4,920,000 |
| Warren Hill Obligation | $9,400,000 |
| Deferred Taxes | $2,798,324 |
| **Total:** | **$17,118,324** |

Defendants do not dispute the amount of the Neptune loan to SFR. Couillard disagreed with the inclusion of deferred taxes as a liability of SFR. Based on his own analysis of the tax returns, he contended that the deferred taxes are a liability of the members of SFR and not SFR itself.

In addition, Couillard disputed the amount Buchakjian included as a liability for the obligation SFR owed to Warren Hill as of January 1, 2018. Buchakjian placed that number at $9,400,000 based on the anticipated trust fee income of approximately $22,200,000 and the anticipated trust certificate income of approximately $21,500,000 that VAP expected to collect as recorded in its consolidated audited financial statement. According to Buchakjian, VAP would then pay SFR, one of its owners, a portion of this income, and SFR was then obliged under the MIPA to pay Warren Hill a percentage of that income.

Couillard, however, concluded based on his own review of the MIPA between SFR and Warren Hill that Buchakjian incorrectly included the trust fee income owed to Warren Hill as of January 1, 2018. Couillard reasoned that at that time VAP had not yet received that income and that SFR did not owe Warren Hill anything until VAP received the trust fee income. Thus, no liability to Warren Hill existed.

He also disputed the amount listed for trust certificate income because in his view that value does not adequately deduct the necessary operating expenses, interest expenses, and reserve amounts and thereby overstates the value of the trust certificate income.[4] He placed the total value of the obligation to Warren Hill at approximately $5,700,000 rather than $9,400,000. Couillard will testify that SFR was solvent as of January 1, 2018 with assets exceeding liabilities by about $750,000.

Warren Hill argues that Couillard's testimony is unreliable because he is unfamiliar with all aspects of the transactions at issue. According to Warren Hill, he did not

---

4. As previously stated, VAP makes use of Delaware statutory trusts to purchase accounts receivable under the VPP. When the State pays VAP as the qualified purchaser the amount received after all the fees and expenses are paid is known as the trust certificate income. VAP then pays a portion of this trust certificate income to SFR, and SFR was obliged under the MIPA to pay Warren Hill a percentage of this income.

11

independently verify the information defendants selectively provided to him and did not review all necessary records, such as defendants' accounting records. Warren Hill posits that Couillard is simply basing his opinion on the self-serving statements and conclusions of defendant Gene Harris, an owner and manager of various defendants and an ultimate beneficiary of SFR and Neptune.

Defendants counter that Couillard used sound methodology to form his opinions and appropriately relied on facts in the record along with reviewing similar documents to Buchakjian. Defendants also assert that Warren Hill's remedy is not the exclusion of Couillard's testimony but rather the use of vigorous cross-examination.

In support of its arguments, Warren Hill relies on Legendary Art, LLC v. Godard in which the district court excluded expert testimony about the market valuations of the plaintiff's business for lack of reliability because the opinions did "not rest on good grounds." 2012 WL 3550040, *4 (E.D. Pa. Aug. 17, 2012). In that case the "linchpin" of the expert's opinion was a business plan showing profit and loss projections that was prepared by a corporate representative who "could not specify on what basis, or by whom, the profit projections were generated" and for which the expert reported that he assumed the validity. Id. at *1, *4.

The district court found that "[t]here is no evidence that [the expert] did anything to verify these profit and loss projections" or that he "had any familiarity with the methods or reasoning used by [plaintiff] to arrive at the projections." Id. at *4. The court concluded that the projections were not supported by any research or study and were the "'subjective belief or unsupported speculation' that renders an expert's opinion inadmissible under Rules 702 and 703." Id. In addition, the court determined that cross-examination would not be useful since the expert did not have any familiarity with the methods and reasonings underlying the projections. Id. at *5.

Couillard's testimony differs from that of the expert in Legendary Art in multiple ways. First, the expert in Legendary Art exclusively relied on the business plan prepared by the plaintiff in forming his expert opinion. By contrast, Couillard testified that he reviewed deposition testimony, including the deposition of Buchakjian and any accompanying documents, as well as affidavits, reports, Harris's calculations, SFR's financial statements, the MIPA, pleadings in the prior litigation, audit reports, tax returns, and some banks statements. Warren Hill emphasizes that Couillard did not review the accounting system records of defendants. Warren Hill, however, fails to show that Couillard's lack of review of that particular set of documents in relation to all of

13

the other records he reviewed renders his testimony unreliable. In contrast to the expert in Legendary Art, Couillard reviewed a much broader universe of documents in forming his opinion.[5]

In addition, the expert in Legendary Art had no knowledge of the underlying methods used by the corporate representative to arrive at these projections. In fact, the corporate representative could not even specify on what basis the projections were generated. Couillard, on the other hand, testified as to how he arrived at each amount in contradiction of Buchakjian's solvency analysis.

He reviewed Harris's calculations of deferred taxes. He explained not only how Harris arrived at those calculations but also his reasoning as to why that amount should not be included as a liability. He also explained his method for calculating the trust fee income and trust certificate income amounts based on the MIPA. The fact that Warren Hill disagrees with Couillard's conclusions as to how to characterize the deferred taxes and other liabilities of SFR does not render his

---

5. Buchakjian testified that he reviewed SFR's bank statements, check registers, income and balance sheets, general ledger information, audited financial statements for VAP, BCM, and BSF, unaudited financial statements for CHGO, tax returns, and other ledger and bank account information. While it appears that Buchakjian did review some documents that Couillard did not review, such as balance sheets and general ledger information, the list of documents Buchakjian reviewed is not so drastically different as to render Couillard's opinion unreliable while admitting Buchakjian's testimony.

opinion unreliable.  See Walker, 46 F. App'x at 695-96.  Rather, Warren Hill may challenge the weight and sufficiency of the evidence underlying these opinions on cross-examination.

Finally, cross-examination here would not be futile as it would have been in Legendary Art where the expert had no familiarity with the data or methodology underlying the projections.  On cross-examination at the preliminary hearing, Couillard was able to explain why he removed the deferred taxes from the calculation as well as his basis for the trust certificate income amounts.  His testimony adequately outlines the underlying methodology for his opinions and demonstrates familiarity with the relevant data in the case.  His opinions are not the "unsupported speculation" of the expert in Legendary Art.

Warren Hill also cites in passing ZF Meritor, LLC v. Eaton Corp. in which our Court of Appeals upheld a district court's exclusion of expert testimony on damages.  696 F.3d 254, 291 (3d Cir. 2012).  Similar to Legendary Art, the court excluded the testimony because the expert solely relied on a one-page internal strategic business plan of profit and volume projections without knowing the circumstances under which the projections were based and without explaining why he relied on such estimates.  Id. at 292.  The district court thus found that the expert "lacked critical information that would be necessary

15

for [defendant] to cross-examine him" and that his testimony did not rest on "good grounds." Id. at 293. That case is distinguishable from this matter for the same reasons as Legendary Art.

Warren Hill argues that Couillard did not adequately review the MIPA that forms the basis for his opinion because he said he "skimmed" it. However, on multiple occasions in his testimony, Couillard cites specific portions of the MIPA on which his opinion is based. Any further arguments Warren Hill wishes to make regarding the weight the fact-finder should give to Couillard's testimony and the depth of his knowledge of the MIPA or any other document reviewed should be addressed on cross-examination.

Pursuant to Rule 702, Couillard is qualified by "knowledge, skill, experience, training, or education" to testify as to his specialized knowledge about his solvency analysis which will "help the trier of fact to understand the evidence." His testimony is based on sufficient data in his review of records related to SFR's financial situation, its obligations pursuant to the MIPA, and documents related to this and prior litigation. In basing his opinion on these records reviewed he has expressed sound principles and methodology for his conclusions and has reliably applied these methods to this situation. Couillard's experience in valuing businesses and

16

performing solvency analyses also helps render his opinion reliable.

Warren Hill may raise valid arguments about Couillard's reliance on Harris for certain numbers in his calculations or other instances in which he did not perform independent verifications. However, we note that Couillard's testimony need not be without flaw, based on the best methodology, or even come to the right conclusions as long as there are still good grounds to hold those opinions. See In re Paoli, 35 F.3d at 744. Rather the jury as the fact-finder is left to conduct the analysis of Couillard's conclusions regarding solvency. In performing our gatekeeping function, we are mindful that Rule 702 "has a liberal policy of admissibility." Kannankeril, 128 F.3d at 806. Warren Hill is welcome to conduct "vigorous cross-examination" and present contrary evidence and testimony to dispute any flaws it sees in Couillard's opinion at trial. See Daubert, 509 U.S. at 596.

While this court was not persuaded by Couillard's testimony at the preliminary injunction hearing, it will be for the jury to decide whether to accept his testimony at trial.

IV

Warren Hill also seeks to exclude Couillard's testimony pursuant to Rule 703 of the Federal Rules of Evidence. Rule 703 states, in part, that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

"While Rule 702 focuses on an expert's methodology, Rule 703 focuses on the data underlying the expert's opinion." In re Paoli, 35 F.3d at 747. Rule 703 speaks to admissibility of the data underlying the opinion and was meant to "supplant the (former) common law rule that experts could not (reasonably) rely on inadmissible evidence." Id. at 749. Rule 703 "places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination." Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002).

In support of exclusion under Rule 703, Warren Hill largely repeats its same arguments for exclusion under Rule 702, that is that Couillard's testimony should be excluded because he did not conduct any independent analysis and simply accepted the data as selectively provided to him by defendants. However, Rule 703 is intended to permit experts to testify based on data that is not otherwise admissible in the case so long as other experts would rely on that data. See In re Paoli, 35 F.3d at 747.

Warren Hill has not made any showing that other experts would not rely on similar data to that which Couillard relied upon.  In fact, Warren Hill's own expert relied on largely similar types of documents in providing his expert opinion.  Furthermore, our Court of Appeals has made clear that the burden in Rule 703 is on opposing counsel to challenge the data underlying opinions on cross-examination.  See Stecyk, 295 F.3d at 414.  Therefore we leave any challenges Warren Hill seeks to make regarding the data underlying Couillard's testimony for cross-examination.  Again, it will be for the jury and not this court to evaluate Couillard's presentation at trial.